1  WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sammye A. Richardson; et. al., | No. CV 06-283-TUC-HCE |
| Plaintiffs, | **ORDER** |
| vs. | |
| Federal Judge D.C. Bury; et. al., | |
| Defendants. | |

Plaintiffs have filed a joint Consent to Exercise of Jurisdiction by United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. No. 7). For the following reasons the Court will dismiss Plaintiffs' Amended Complaint.[1]

I.   INTRODUCTION & MOTION TO PROCEED *IN FORMA PAUPERIS*

This action is brought by Plaintiffs Sammye A. Richardson (hereinafter "Plaintiff SAR") and Michael A. Richardson (hereinafter "Plaintiff MAR") (or collectively "Plaintiffs") who appear *pro se*. The Court has previously granted Plaintiff SAR's Motion

---

[1] Plaintiffs' Amended Complaint was filed as of right pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure.

to Proceed *in Forma Pauperis*. (Doc.No. 9). The Motion to Proceed *in Forma Pauperis* and Supporting Information bore the signature of only Plaintiff SAR and was unclear whether Plaintiff MAR wished to proceed *in forma pauperis* as well. The Court stayed service of process and directed Plaintiff MAR to indicate whether he wished to proceed *in forma pauperis.* (Doc. No. 10). Upon review of Plaintiffs' Response that Plaintiff MAR also seeks *in forma pauperis* status and in light of the record as a whole, the Court grants *in forma pauperis* status to Plaintiff MAR as well. *See* 28 U.S.C. §1915.

II. SCREENING THE COMPLAINT

Determination that a plaintiff is unable to pay the requisite costs and fees does not end the analysis. Pursuant to the *in forma pauperis* statute, the court must dismiss any complaint filed *in forma pauperis* if the court determines that the complaint is frivolous or malicious; fails to state a claim upon which relief can be granted; or seeks monetary relief from an individual who is immune from such relief. 28 U.S.C. §1915(e)(2)(B)(i)-(iii); *see also Franklin v. Murphy,* 745 F.2d 1221, 1226-1227 (9th Cir. 1984).

A. Standard

A complaint is to contain:

(1) a short and plain statement of the grounds for the court's jurisdiction...;
(2) a short and plain statement of the claim showing the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed.R.Civ.P. 8(a).

When the plaintiff is *pro se,* the complaint must be liberally construed in the interests of justice. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (*pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers..."); *Johnson v. Reagan,* 524 F.2d 1123 (9th Cir. 1975) ("Pleadings should be liberally construed in the interests of justice, particularly when a pleader is not learned in the law."). Nonetheless, *"[p]ro se* litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987); *see also Ghazali v. Moran,* 46 F.3d 52 (9th Cir. 1995) ("*pro se* litigants are bound by the rules of procedure.").

It is a well-settled tenet that a complaint must "'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The Court takes judicial notice[2] that the District Court for the District of Arizona has advised Plaintiffs of this tenet in previous actions. *See, e.g., Richardson et. al. v. First American Field Services,* CIV 04-452-TUC-CKJ (hereinafter "CIV 04-542") (Doc. Nos. 66 (Dec. 20, 2004), 158 (June 24, 2005)) (wherein both SAR and MAR were plaintiffs); *Richardson v. United States Government, et. al.,* CIV 04-334-TUC-FRZ (Doc.No. 5 (July 12, 2004)) (wherein SAR was plaintiff); *Richardson v. Judge Oliver Wanger, et. al.,* CIV 03-549-TUC-FRZ (Doc. Nos. 22 (January 13, 2004), 131 (April 2, 2004)) (wherein SAR was plaintiff). Furthermore, all allegations of a claim are to be set forth in numbered paragraphs that should be limited to a single set of circumstances. Fed.R.Civ.P. 10(b); *see also* CIV 04-542 (Doc. No. 66) (informing Plaintiffs herein of requirements of Rule 10). Failure to set forth claims in such a manner places the onus on the court to decipher which, if any, facts support which claims, as well as to determine whether the plaintiff is entitled to the relief sought. *Haynes v. Anderson & Strudwick, Inc.,* 508 F.Supp. 1303, 1307 n.1 (D.C. Va 1981). Enforcement of Rule 10 of the Federal Rules of Civil Procedure is discretionary with the court, but such enforcement is appropriate where it is necessary to facilitate a clear presentation of the claims. *See Benoit v. Ocwen Financial Corp.,* 960 F.Supp. 287 (S.D. Fla. 1997) (compliance with rule required where allegations were so confusing, conclusory and commingled that it was impossible to determine nature of claims).

When deciding whether the plaintiff has stated a claim, the court must construe the

---

[2]Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or capable of accurate and ready determination. *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 688-690 (9th Cir. 2001)), *impliedly overruled on other grounds as discussed in Gallardo v. Dicarlo,* 203 F.Supp.2d 1160, 1162 n.2 (C.D. Cal. 2002). When deciding whether a matter should be dismissed for failure to state a claim "a court may look beyond the plaintiff's complaint to matters of public record." *Shaw v. Hahn,* 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (citation omitted)). The court opinions cited are public records capable of accurate and ready determination.

complaint in the light most favorable to the plaintiff; accept all well-pleaded factual allegations as true; and determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *See Cervantes v. United States,* 330 F.3d 1186, 1187 (9th Cir. 2003); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). To survive dismissal for failure to state a claim under section 1915(e)(2)(B)(ii), the plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. 1937, 1949 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (*quoting Twombly,* 550 U.S. at 570). Thus, the factual allegations pled "'must be enough to raise a right to relief above the speculative level." *Williams v. Gerber Products Co.,* 552 F.3d 934, 938 (9th Cir. 2008) (*quoting Twombly,* 550 U.S. at 555); *see also SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 783 (9th Cir. 1996) (a claim may be dismissed because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a claim). "'[T]he pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" *Twombly,* 550 U.S. 544, at 555 (*quoting* 5 C. Wright & A. Miller, *Federal Practice and Procedure* §1216, pp. 235-236 (3rd ed. 2004)). Moreover, the court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'" Ashcroft, __ U.S. __, 129 S.Ct. at 1949-1950 (*quoting Twombly,* 550 U.S. at 556); *see also Western Mining Council,* 643 F.2d at 624 (although the complaint is generally construed favorably to the pleader, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft,* __ U.S. __, 129 S.Ct. at 1949 (*quoting Twombly,* 550 U.S. at 557)). Furthermore, the complaint must contain a statement of the claim showing that the plaintiff is entitled to relief "rather than a blanket assertion[] of entitlement to relief." *Twombly,* 550 U.S. at 556 n.3. When reviewing a complaint to evaluate whether the plaintiff has stated a claim, the court must determine whether the plaintiff has 'nudge[d] [his or her] claims across the line from

conceivable to plausible...." *Id.* at 570.

Additionally, a complaint will be dismissed under section 1915(e)(2)(B)(i) as frivolous where there is no arguable basis for relief either in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989), *superseded on other grounds by* 28 U.S.C. §1915. *See also Denton v. Hernandez,* 504 U.S. 25 (1992). Factual frivolousness includes allegations that are clearly baseless, fanciful, fantastic, or delusional. *Denton,* 504 U.S. at 32-33 (*citing Neitzke,* 490 U.S. at 325, 327, 328). Furthermore, complaints "'that merely repeat[] pending or previously litigated claims'" may be dismissed as frivolous. *Cato v. U.S.,* 70 F.3d 1103, 1105 n.2 (*quoting Bailey v. Johnson,* 846 F.2d 1019, 1021 (5th Cir. 1988)). Legal frivolousness justifies dismissal under section 1915 where a complaint is based on "an indisputably meritless legal theory...[such as] claims against which it is clear that the defendants are immune from suit, and claims of infringement of a legal interest which clearly does not exist...." *Neitzke*, 490 U.S. at 327 (internal citation omitted).

A complaint is deemed to be malicious if it suggests an intent to vex defendants or abuse the judicial process by relitigating claims decided in prior cases. *Crisafi v. Holland,* 655 F.2d 1305, 1309 (D.C. Cir. 1981); *Phillips v. Carey,* 638 F.2d 207, 209 (10th Cir. 1981); *see also Spencer v. Rhodes,* 656 F.Supp. 458, 463 (E.D.N.C. 1987), *aff'd,* 826 F.2d 1059 (4th Cir. 1987); *Sitanggang v. Indymac Bank,* 2009 WL 1286484, *6 (E.D. Cal. May 6, 2009). When determining whether an action is malicious, the Court need not look only to the complaint before it, but may also look to the plaintiff's prior litigious conduct. *Cochran v. Morris,* 73 F.3d 1310, 1316 (4th Cir. 1996). However, "a complaint filed *in forma pauperis* is not subject to dismissal simply because the plaintiff is litigious. The number of complaints a poor person files does not alone justify peremptory dismissal. In each instance, the substance of the impoverished person's claim is the appropriate measure." *Crisafi ,* 655 F.2d at 1310.

In screening the complaint, the court is not to act as counsel or paralegal to *pro se* litigants. *Pliler v. Ford,* 542 U.S. 225, 231 (2004); *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000). A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment. *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987).

B.   Plaintiffs' Allegations

Plaintiffs name the following Defendants:

> Federal Judge D C Bury; Federal Judge John M. Rolls [sic]; Judges [sic] Oliver Wanger; Judge Whitney Rimel; United States Eastern District Hereinafter "EUSDC"; Region 17 for its employee Jeffrey Lodge; California Law Firm Caswell Bell & Hillison; HAGOP T. Bedoyan "HTB"; Brian Cuttone; David Roberts...collectively with partners "CB&H"; Tanis Duncan Attorney At Law...; Robert Weiss Incorporated and James Lee Bar... hereinafter collectively "Weiss"; David McEvoy; McEvoy Darcy & Daniels an Arizona law firm and First American Corp. of Santa Ana; First American Title Insurance Company as Attorney infact [sic] agents and Subsidiaries for Loanstar Mortgage Services; Lonestar Mortgagee Services, L.L.C.; Wells Fargo Trustee Mortgage Service Company of California...; Beneficiary GMAC Mortgage Corporation PA.; Assignee Norwest Mortgage Inc.,; GMAC doing business as Ocwen Federal Bank; New Century and Bank One of Chicago its affiliates, owners, agents or principals hereinafter individually and collectively "FATCO" et al [sic]; Does 1-100.

(Amended Complaint, p.1) (original appears in all capital letters).

Plaintiffs' Amended Complaint consists of 27 pages which vary between single-spaced and double-spaced lines. Plaintiffs' Amended Complaint sets forth a "Jurisdictional and statutory statement" wherein the theme of the allegations that run through the Amended Complaint are summarized by Plaintiffs as follows:

> THIS SUIT IS FILED for due process violation against a victim of unjust crime first targeted and financially marginalized prior to being named in multiple interstate suits in an alleged scheme to take over their individual "LLC" held estate under color of defaults in payments with superior knowledge that defaults are a creation of these defendants; and "SAR" is innocent of the allegations; this scheme is continued with the participation of shopped and or assigned judges; hired litigants acting as a front for the structure that resembles a "Rico" enterprise, and relief filed as a civil right and constitutional violation claim demanding certification for the same in good faith.

(Amended Complaint, p. 2). Following this statement are 9 pages of excerpts from and citation to various statutes and rules, the United States Constitution and Amendments, and

case law interspersed with virtually incomprehensible statements most often comprised of a litany of words upon words. In sum, Plaintiffs allege a conclusory litany of wrongdoing on behalf of Defendants but provide little, if any, factual allegations–and the factual allegations that are attempted are "so verbose, confused and redundant that [their] true substance, if any, is well disguised." *Corcoran v. Yorty,* 347 F.2d 222, 223 (9th Cir. 1965). What this Court can discern is that Plaintiffs attempt to state claims under the Due Process Clause and the Racketeering Influenced and Corrupt Organization (hereinafter, "RICO") statute.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving persons of due process, while the Due Process Clause of the Fourteenth Amendment prohibits deprivations of due process by persons acting under color of state law. *See Bingue v. Prunchak,* 512 F.3d 1169, 1174 (9th Cir. 2008) (noting that the language of the due process clause is identical in each amendment). "The two Clauses should be applied in the same manner when two situations present identical questions differing only in that one involves a proscription against the federal government and the other a proscription against the States." *Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th Cir. 1993). To state a claim for a violation of the Due Process Clause, the plaintiff must allege that the defendant denied the plaintiff a specific right protected by the federal constitution, without procedures ensuring fairness (procedural due process), or deliberately abused his power without any reasonable justification in aid of any government interest or objective and only to oppress in a way that shocks the conscience (substantive due process). *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995); *Daniels v. Williams*, 474 U.S. 327 (1986). Substantive due process rights are those not otherwise constitutionally protected but which are deeply rooted in this country's history and tradition and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it were sacrificed...." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks and citation omitted).

The RICO statute imposes civil liability upon "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c); *see also* 18 U.S.C. § 1962(d) ("[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a),(b),(c) of this section."). To state a claim for relief in a private RICO action, Plaintiffs must allege facts that, if proved, would show "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.,* 486 F.3d 541, 548 (9th Cir. 2007) (*quoting Sedima S.P.R.L. v. Imrex,* 473 U.S. 479, 496 (1985)). Additionally, Plaintiffs must allege that Defendants entered into a *conspiracy*, the overall objective of which was to conduct an enterprise through a pattern of racketeering. 18 U.S.C. § 1962(d).

Plaintiffs, upon citing and quoting the Fifth and Fourteenth Amendments, allege:

> See public record sale of eighty million dollars worth of properties sold with, by and through the help of Fed.'s without compensation to the Plaintiff's [sic] and without jurisdiction to make such negations to sell and impose liens by the feds. and State Authorities like the Department of Arizona real estate for imposing false prosecution of convicted Felon Richard Romero's crimes on to the estate of the Richardson's.
>
> \*\*\*
>
> Denial of Jury Trial; evidentiary hearings or equal access to Justice for underlying...Illegal conversion by Richard Romero and Walsh 1996 [June 06, 1997 confirmed by Arizona Attorney General's own words] and the subsequent theft of properties not in the jurisdiction of F-98-5393-oww and bankruptcy 02-10465-A-7 and jointly administered cases over properties located in StarrPass by and through StarrPass agents including 1120, 1124, 1128, 1132, 1136, 1140, 1144, 1148, South Little Buck Loop, 1091 Bill Martin Drive and 12 other properties in StarrPass Tucson Arizona and (3) Kenyon Terrace homes located at 704 and 716 South Cynthia, 7585 East Cynthia Drive plus (17) Lots in Tucson Arizona to offer as sample, destroyed "LLC" Rock of Gibraltor [See Patsy Andrews, Coldwell Banker Realtor.]
>
> \*\*\*
>
> [T]his governs the jurisdictional landscape of this case, calling for an answer whether malicious Prosecution, vexatious injunctions; stays and over broad global liens with or without jurisdictions, Bankruptcy pre-mediation, unauthorized Tax and Foreclosure sales, Homestead Violations, duplicative claims and Falsification of Bankruptcy claims, were and are in fact a violation of a "Citizens [sic] right under the Constitution."

(Amended Complaint, pp. 7, 8, 10) (emphasis omitted).

Interspersed among citations to and quotations from the RICO statute and various cases, Plaintiffs specifically allege that:

- "'RICO' encompasses both legitimate and illegitimate enterprises. *United States v. Turkette,* 452 U.S. 576 (1981) ["'FATCO' escrow and Title license is a front for I.D. theft and quick rich scheme of insider information from disclosure by clients to enable 'FATCO' to buy up tax liens then enjoin escrows of targeted victims to take over properties. See example of 1136 enjoined from sale for the last five years, 'FATCO' holding lien rights on tax sale; see multiple properties where 'FATCO' bought lien rights after stopping pending escrows of 'SAR [sic] properties"];

- Judge Oliver Wanger, Judge Whitney Rimel, FATCO, CB&H "work as associates to disenfranchise 'SAR' from accessing due process and right to claim 'SAR's' own estate";

- "Conspiracy to defraud is offered by a road map in 'CB&H' held record of meeting; conspiracy; planning log"[3];

- "continual pattern of influence purchase from 1996 to date controls all defendants, some for a one year other for two to ten years by their pattern of participation in crime";

- "'RICO' enterprise need not be economically motivated. *National Organization for Women, Inc., v. Scheidler,* (510 U.S. 249 (1993) [Judges [Warner, Rimel, Department

---

[3]Elsewhere in the Amended Complaint, Plaintiffs state a litany of conclusory allegations against CB&H which include padding bills, malicious prosecution, "[i]nterception of escrows", defamation, "continual pattern of copy cat abuse", and duplicative case filings. (Amended Complaint, p.16). In yet another section of the Amended Complaint, Plaintiffs allege that CB&H "bribed and hired litigants to access the vast estate of innocent parties to gain unjust enrichment; to this end the State of California was a willing participant in the continuation of this crime;....hired trained and prepared Sanchez to lie, commit perjury, defame and destroy 'SAR'...."and "filed multiple suits against 'SAR' for the same claim....." (Id. at p. 22).

of Justice employee[4]]...Lodge employed by Region 17 participated in the management of the creation of insolvency and this management led to the Bankruptcy of 'SAR'";

- the claim is predicated on "[m]ail [f]raud; electronic fraud; telephone fraud pattern can be seen from 1999-March 12, 2003 and June 2003 through September 15, 2003. Then again all through 2004 to November 2005 and continuing till today...all pattern open ended and ongoing]";

- with regard to injury, Plaintiffs allege: "forced out of construction and rental business".

(Amended Complaint, pp. 10-12) (emphasis omitted; unless otherwise indicated, brackets appear in original). Elsewhere in the Amended Complaint under the caption "Complaint", Plaintiffs state:

> It is alleged that this case is based on underlying loss of over seventy five thousand dollars and questions of federal law; that resemble an Enterprise consisting of verified interstate Banking, Insurance, Escrow, Title and national kickback scheme Fraud by and through employees of corporations paid for hiring middle men law firms to lay the ground work for a smooth collusion through state and federal government agents and agencies with promises of incentives. The named corporation is now exposed for its structure of bribery by four state agencies with fifth New York State doing a criminal investigation. This influence peddling controls state court cases arising from a common occurrence of deep pocket corporation's ability to provide money, incentives and kickbacks in return for favorable default judgments where the fraud, document alteration, bank fraud, title fraud, escrow enjoinments and or selective shopping is committed by them and the judges recruited to preside are aware of this....

(Id. at pp. 18-19) (emphasis and footnote omitted[5]).

Plaintiffs go on to

> allege a conspiracy to bypass the statutory and constitutional rights of a marginalized adversary; by the below listed tactics: Control of jurisdiction

---

[4] Plaintiffs refer to these individuals by initial. For clarity, the bracketed information is provided instead.

[5] The footnote omitted from the quotation appears to be a copy of a newspaper article regarding state agency investigation of at least one of the named defendant corporations. Plaintiffs have not alleged sufficient facts to link their claims to such investigation. *See e.g. Williams,* 552 F.3d at 938 (factual allegations pled must be enough to raise the right to relief above the speculative level).

> through Judge shopping; as a means to cover up fraud; because the exposure may blow the lid off State and Federal Judges on deep pocket incentive plan.

(Id. at p. 19) Plaintiffs cite rulings from the District Court for the District of Arizona and the "EUSDC"[6] which apparently differed from one another regarding fee waivers. Plaintiffs state: "The only way out by the self admitted incompetent 'EUSDC' was to accept denial of fee waiver with a June 15, 2006 deadline to come up with the money as a technical way out; with superior knowledge no such compliance is possible on the budget 'SAR' is juggling with..." (Id.) (emphasis omitted). Plaintiffs also conclusorily allege that court cases were "secretly assign[ed]...." and negotiated and that Defendant FATCO "paid Judges; Justices;

---

[6]It is not clear what Plaintiffs mean by reference to "United States Eastern District Hereinafter 'EUSDC'". (Amended Complaint p.1). Although the Court is inclined to construe such reference to refer to the District Court for the Eastern District of California given that two of the named Defendant judges preside in that jurisdiction; however, this construction is not entirely supported by Plaintiffs' allegations because Plaintiffs refer to the former Chief Judge of Ninth Circuit Court of Appeals. Plaintiffs describe EUSDC as follows:
> at all times a [sic] during events leading up to this case Federal agency Eastern District controlled by Mary Schroeder, with a role in cover-up of underlying common occurrence that has led to (32) cases and bankruptcy pre-mediation; Jury tampering; Federal collusion with deep pockets; Nepotism and Peer Pressure altering the outcome of DC#06-15057; DC#02-16129 despite September 21, 2004 order and because of the exposure of the June 22, 2004 exparte [sic] communication of "FATCO" with Justice Schroeder Chief Judge of the eastern District resulting in violation of constitutional right to address ones [sic] own government for grievance of this Plaintiff; unequal access to Justice leading to unjust gain of the defendants against the weaker involuntary debtor; weakened by lack of access to justice for the last nine years marginalizing victims "SAR" through credibility and financial marginalization as a structure, in the face of clear evidence demanding a matter of law hiring under exceptional circumstances of State and Federal agents involvement in cover-up of conspiracy Prima Fascia [sic] Theft and Duplicative Adversarial Cross-claims leading to conversion under color of Authority justifying grounds for relief by Judicial sales of abandoned properties facing Tax defaults and Foreclosures due to escrow interception as a pattern for the last nine years. For collective culpable acts pursuant to facilitation of violations under Canon 2; Canon 3A(4) and 28 U.S.C. §455 referred to as "EUSDC."

(Amended Complaint, p. 15) (emphasis omitted).

hired litigants and their attorneys." (Id. at p. 21). The "Parties listed as Defendant's [sic]" section of Plaintiffs' Amended Complaint contains a stream-of-conscious litany of alleged acts for some but not all of the named Defendants. (Id. at pp.12-17).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice to state a claim." *Ashcroft*, __ U.S. __, 129 S.Ct. at 1949. Although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era,...it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at __, 129 S.Ct. at 1950. Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

The Amended Complaint is devoid of comprehensible factual allegations to support Plaintiffs' claims. Instead, Plaintiffs' conclusory and redundant assertions make little sense, are non-sequitur, and/or amount to nothing more than an attempt to recite the formula of RICO[7] and due process claims together with legal conclusions couched as factual allegations.

---

[7]Moreover, with regard to Plaintiffs' allegations of "[m]ail fraud; electronic fraud; telephone fraud..." upon which their RICO claim is predicated (Amended Complaint, pp. 11-12), Rule 9(b) "'requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Odom,* 486 F.3d at 554 (*quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1400 (9th Cir. 1986)). Plaintiffs "'must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Id.* (*quoting Schreiber Distrib. Co.*, 806 F.2d at 1401). Although the factual circumstances of the fraud itself must be alleged with particularity, Plaintiffs may allege the state of mind, or scienter, of the defendants generally. *Id.* (citation omitted). "'[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and specific intent to deceive or defraud.'" *Id.* (*quoting Schreiber Distrib. Co.,* 806 F.2d at 1400). The elements of mail fraud differ only in that they involve the use of the United States mails rather than wires. *See* 18 U.S.C. § 1341. "The only aspects of wire [and mail] fraud that require particularized allegations are the factual circumstances of the fraud itself." *Odom,* 486 F.3d. at 554. Although Plaintiffs cite Fed.R.Civ.P. 9(b) for the premise that "issue of fraud or mistake must be detailed....", (Amended Complaint, p. 3), Plaintiffs have failed to plead with the requisite specificity under Rule 9(b) that any of Defendants' representations were fraudulent. Nor does Plaintiffs' reference to ranges of time periods in which the mail and wire fraud

- 12 -

Nor does Plaintiffs' litany of conclusory statements throughout their entire Amended Complaint provide Defendants fair notice of Plaintiffs' claims and/or the grounds upon which they rest. In sum, Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted.

### B. Judicial Immunity

Plaintiffs name several federal district judges and bankruptcy judges as Defendants. Plaintiffs' allegations against the named Defendant judges from the District of Arizona include allegations that the judges reached different rulings in "like cases..." resulting in "unequal justice without jurisdiction over Plaintiff's 'LLC'"...with intent to harm Petitioner" and "malicious prosecution....." (Amended Complaint, p.13). Plaintiffs also allege that one of the named Defendant judges defamed Plaintiffs during proceedings pending before him by "alleging bad faith for 'SAR' asking for a fee waiver...." (Id. at pp.19-20).

Plaintiffs allege that "Federal Judge Oliver Wanger" is married to someone who "may have gone to school with some named [D]efendants from..." CB&H. (Id.) They also list a litany of actions including "[j]ury tampering, federal collusion with deep pockets and the giving of unequal justice without jurisdiction....marginalizing...'SAR'...presiding over malicious prosecution...concealment of evidence....." (Id. at pp. 13-14).

Plaintiffs allegations against Bankruptcy Judge Whitney Rimel are similar to those lodged against Judge Wagner, with the exception of the allegations relating to Judge Wagner's spouse. (Id. at pp. 14-15). Additionally, Plaintiffs allege that false testimony was given during the bankruptcy proceedings pending before Judge Rimel whose "job was to ensnare 'Rock' and the 'SAR' children and the family jewels as a tactic of shakedown without jurisdiction it was a crime and all damages by control over non parties subject of

---

occurred suffice to state with specificity the time, place and specific content of Defendants' allegedly fraudulent representations. Nor have Plaintiffs sufficiently alleged which of the Defendants allegedly participated in such fraud. The Court's decision to dismiss the Amended Complaint is not based on Plaintiffs' failure to plead mail and wire fraud with particularity. However, this is just another example of the defects in the Amended Complaint.

1 restitution." (Id. at p. 25)

2 Plaintiffs also refer to the named Defendant judges as "individual[s] for lack of
3 discretional jurisdiction over non-jurisdictional matters..." and/or "over non- jurisdictional
4 'LLC' and...family properties...." (Id. at pp. 13-15).

5 What the Court is able to glean from Plaintiffs' allegations is that Plaintiffs' current
6 action is, in part, an attempt to appeal rulings made by all of the named Defendant judges
7 herein and by the "United States Eastern District".

8 "Few doctrines were more solidly established at common law than the immunity of
9 judges from liability for damages for acts committed within their judicial jurisdiction...."
10 *Pierson v. Ray,* 386 U.S. 547, 553-554 (1976), *overruled on other grounds, Harlow v.*
11 *Fitzgerald,* 457 U.S. 800 (1982). "'The judicial or quasi-judicial immunity available to
12 federal officers is not limited to immunity from damages, but extends to actions for
13 declaratory, injunctive and other equitable relief.'" *Moore v. Brewster,* 96 F.3d 1240, 1243-
14 1244 (9th Cir. 1996), *superseded by statute on other grounds as discussed in Meinhold v.*
15 *Sprint Spectrum, L.P.,* 2007 WL 1456141 (E.D. Cal. May 16, 2007), (*quoting Mullis v.*
16 *Bankruptcy Court for the District of Nevada,* 828 F.2d 1385, 1394 (9th Cir. 1987)).
17 Allegations of legal error do not deprive judicial officers of such immunity. *Id.* at 1244.
18 "This immunity applies, 'however erroneous the act may have been, and however injurious
19 in its consequences it may have proved to the plaintiff.'" *Id.* (*quoting Cleavinger v. Saxner,*
20 474 U.S. 193, 199-200 (1985)); *see also Stump v. Sparkman,* 435 U.S. 349, 355-356 (1978)
21 ("A judge will not be deprived of immunity because the action he took was in error, was
22 done maliciously, or was in excess of his authority...."); *Sun v. Forrester,* 939 F.2d 924, 925-
23 926 (11th Cir. 1991) (where judge's alleged derogatory remarks occurred during the context
24 of court proceedings, judicial immunity barred suit against him).

25 Furthermore, to the extent that Plaintiffs attempt to allege some kind of conspiracy
26 among some or all of the named Defendant judges and/or other named Defendants, judicial
27 immunity is not "lost by allegations that a judge conspired with one party to rule against
28 another party: 'a conspiracy between [a] judge and [a party] to predetermine the outcome of

a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges....'" *Id.* (*citing Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir. 1986)). On the instant record, Plaintiffs' allegations that multiple judges from multiple jurisdictions are colluding in cases filed by and against Plaintiffs are subject to dismissal as wholly irrational, incredible and fanciful. *Denton,* 504 U.S. at 33. This is especially so given that at least one court has expressly found as "bad faith conduct" Plaintiffs' practice of filing suits against judges with whose ruling Plaintiffs disagree. *Richardson et. al. v. Ninth Circuit Court of Appeal,* 2007 WL 39429 at *3 (E.D. Cal. January 5, 2007).

Only two sets of circumstances limit judicial immunity: (1) nonjudicial actions; and (2) actions, though judicial in nature, taken in complete absence of jurisdiction. *Moore,* 96 F.3d at 1244 (*citing Stump,* 435 U.S. at 356-357, 360). With regard to the latter, the Supreme Court has given the following illustration of the difference between an act in the clear absence jurisdiction to which immunity does not apply and an act in excess of jurisdiction to which immunity applies:

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump,* 435 U.S. at 357 n.7 (*citing Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351 (1872)).

To the extent that the Court is able to decipher Plaintiffs' allegations, the Court construes such allegations liberally to allege that the named Defendant judges lacked jurisdiction.[8] However, Plaintiffs' allegations show that the named Defendant judges were

---

[8]The following is one example of Plaintiffs' allegations as to how named Defendant judges acted without jurisdiction:
> When "SAR" is the defendant as in the case in CV 03-491-TUC where "SAR" entity "ROCK" is a named defendant; on the date of the suit "ROCK" was in the control of the bankruptcy court, who around September 2004 admitted to have rendered a [sic] order TGM-12 that claimed to have abandoned "ROCK" without explanation, if the abandonment was legitimate; would Trustee have sold all "ROCK" assets and "SAR" have to fight with SAR-31-SAR-45 to get release of "ROCK" property and why TGM-1-11 and TGM-13-27 filed. On

acting within their judicial capacity while presiding over court proceedings and that Plaintiffs disagreed with rulings entered in those cases. Plaintiffs' "'naked assertion[s]"... that the named Defendant judges lacked jurisdiction over such proceedings "are devoid of further factual enhancement" to state a claim for relief that is plausible on its face. *Ashcroft,* __ S.Ct. __, 129 S.Ct. at 1949. Consequently, the allegations of the Amended Complaint do not defeat application of judicial immunity. Therefore, Plaintiffs' claims against the named Defendant judges are properly dismissed pursuant to 28 U.S.C. §1915. *Sun,* 939 F.2d at 925-926 (because judicial immunity applied, the plaintiff's *in forma pauperis* action was "completely without a legal basis, and the district court properly dismissed this case prior to service of process" pursuant to 28 U.S.C. §1915); *Moore v. Burger,* 655 F.2d 1265 (D.C. Cir. 1981) (where defendant judges were entitled to judicial immunity, "complaint was therefore completely frivolous and was properly dismissed" pursuant to 28 U.S.C. §1915).

///
///
///
///
///
///
///
///

---

or before the date of the filing CV-491-TUC, no contact exists by and between of any relationship of the alleged hired Litigants to ROCK GIBRALTOR LLC HEREINAFTER "ROCK"...On the flip side in CV 05-485 defendants did not raise lack of jurisdiction or bother to response [sic] to a clear precise complaint filed by "SAR" with the judge calling an appeal for default for verified losses caused by the named defendants of CV 05-485 "Bad Faith" and failing to certify the Appeal and fee waiver despite contradiction with his own prior order and precedence to support fee waiver granting under these circumstances by every court including the Supreme Court.

(Amended Complaint, p.3, n.2) (ellipses in original; boldface emphasis omitted).

C.      Dismissal[9]

The Court takes judicial notice that the District Court for the District of Arizona has previously noted that Plaintiffs, "[u]nable to obtain favorable rulings in other legal actions or appellate review of other legal actions,...have attempted to set forth causes of action based on those other legal actions against these and similar defendants in CIV 02-495-TUC-WDB; CIV 03-549-TUC-FRZ; CIV 04-334-TUC-FRZ, and..." CIV 04-542.[10]  CIV 04-542 (Doc.

---

[9]"A Magistrate Judge may not deny an application to proceed *in forma pauperis* or issue an Order dismissing a case [under the *in forma pauperis statute*] without the consent of plaintiff." *Recht v. Templin,* 2007 WL 2572210, n.1 (N.D. Cal. Sept. 5, 2007) (*citing Tripati v. Rison,* 847 F.2d 548 (9th Cir. 1988)); *see also* LR Civ. 72.2(a)(4), Rules of Practice of the U.S. District Court for the District of Arizona ("Subject to the Constitution and laws of the United States, Magistrate Judges in the District of Arizona shall...[m]ake determinations and enter appropriate orders pursuant to 28 U.S.C. § 1915 with respect to any suit, action, or proceedings in which a request is made to proceed *in forma pauperis* consistent with federal law except that a Magistrate Judge may not deny a request for *in forma pauperis* status unless the person requesting such status has expressly consented in writing to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)."). Consent from defendants who have not been served is unnecessary in this case because unserved defendants are not deemed to be "parties" under 28 U.S.C. § 636(c). *Neals v. Norwood,* 59 F.3d 530, 532 (5th Cir. 1995) (magistrate judge had jurisdiction to dismiss action as frivolous without consent of defendants because defendants had not been served yet and therefore were not parties); *see also Walters v. Astrue,* 2008 WL 618933 * 2 n.6 (N.D. Cal. Mar. 4, 2008) (granting motion to proceed *in forma pauperis* and dismissing complaint pursuant to 28 U.S.C. § 1915(e)(2) where plaintiff consented to magistrate judge, and noting that consent of unserved defendants was not required under such circumstances); *Trujillo v. Tally,* 2007 WL 4261928 (D. Idaho Nov. 30, 2007) ("The Court does not need to obtain consent from defendants who have not been served because they are not 'parties' under the meaning of 28 U.S.C. § 636(c).").

[10]Other Courts have made similar observations.  *See Richardson et al. v. First American Title Insur. Co., et. al.,* 2008 WL 4370113 (C.D. Cal. Sept. 24, 2008) (noting that "[s]ince entry of judgment in this case on March 5, 2002, the Richardsons have filed scores of documents, which are largely unintelligible, making groundless accusations against judicial officers of the Circuit, District, and Bankruptcy Courts. The Richardsons refuse to follow orders limiting their prolix filings and have vexatiously multiplied the proceedings in the District and Bankruptcy Courts.); *Richardson,* 2007 WL 39429 at *3 (denying Plaintiffs SAR and MAR leave to amend complaint "because it appears that Plaintiffs are engaged in the bad faith conduct of suing judges and courts after they issue rulings that Plaintiffs do not agree with in an attempt to have them disqualified or recused from ongoing

No. 158 (June 24, 2005)) (dismissing with prejudice Plaintiffs' fourth amended complaint wherein Plaintiffs attempted, *inter alia,* to state a RICO claim). The same is true for the instant case as well. Furthermore, Plaintiffs have previously received from the District Court for the District of Arizona specific instruction with regard to the requirements of Rule 8 of the Federal Rules of Civil Procedure. *See* CIV 04-542.[11] Plaintiffs have also received specific instruction for stating a RICO claim against many of the same Defendants as named herein, have been provided opportunities to set forth such a cause of action, and have met with dismissal for failure to state such a claim. *See* CIV 04-452.[12] The District Court for the District of Arizona has specifically found that Plaintiff SAR is not an inexperienced litigant.

---

or future cases" and noting that "Plaintiffs are also displeased with the Ninth Circuit for issuing an order prohibiting Plaintiffs from filing new appeals or petitions without permission of the court...and have sued the Ninth Circuit as well."); *see also Richardson et. al. v. Ninth Circuit Court of Appeal,* 2007 WL 587010 (E.D. Cal. Feb. 23, 2007) (denying Plaintiffs' motion for reconsideration of 2007 WL 39429).

[11]Plaintiff SAR also previously received similar instruction in other actions. *Richardson v. United States Gov't. et. al.,* CV 04-334-TUC-FRZ (Doc. No. 5 (June 12, 2004)) (noting that "[i]t is not possible to decipher from the Complaint what Plaintiff's actual claims are and against which named defendants they are alleged", and dismissing complaint without leave to amend for failure to comply with Fed.R.Civ.P. 8(a) and 9(b) and because "Plaintiff is unable to establish a factual basis which would support a claim to entitle Plaintiff to relief...."); *Richardson v. Judge Oliver Wanger, et. al.,* CIV 03-549-TUC-FRZ (Doc. No. 131 (April 1, 2004)) (dismissing amended complaint where Plaintiff had been warned of the requirements of Fed.R.Civ.P. 8 and Plaintiff failed to so comply in that, *inter alia*, "[i]nstead of presenting 'simple, concise, and direct' averments as required by Rule 8..., Richardson's...[seventh attempt to amend the complaint] is 'so verbose, confused and redundant that its true substance, if any, is well disguised.' *Corcoran v. Yorty,* 347 F.2d 222, 223 (9th Cir. 1965).").

[12]This Court does not invoke the doctrine of res judicata. *See, e.g., Denton,* 504 U.S. 34 (discussing res judicata effect of dismissals under section 1915). Nonetheless, Plaintiffs' litigation history cannot be ignored. Moreover, although the Court refrains from making such a finding here, Plaintiffs' litigation history noted herein lends support to the inference that Plaintiffs are engaged in the scheme of filing malicious and vindictive legal actions without legal merit. *See e.g. Cochran,* 73 F.3d at 1316 (when considering whether action is malicious, court may look to the plaintiff's prior litigious conduct).

1 | *See Richardson v. Caswell Bell and Hillison, et. al.*, CIV 05-485-TUC-DCB (Doc. No. 57 (December 14, 2005)) (*citing* CIV 02-495-TUC-WDB; CIV 03-549-TUC-FRZ; CIV 04-334-TUC-FRZ; CIV-04-542-TUC-CKJ; CIV 99-17-TUC-JMR).  Yet, Plaintiffs' Amended Complaint is no closer to a comprehensible document than those filed in previous actions. Instead, this latest action is another in a long history of attempts to lodge unintelligible claims against many of the same defendants as named herein including a growing list of judges with whose rulings Plaintiffs disagree and who are immune from suit. *See, e.g., Richardson,* 2007 WL 39429 at *3; CIV 04-542. Under such circumstances, it is absolutely clear that leave to amend to comply with Rule 8 and to state a claim would be futile. *See Lopez,* 203 F.3d at 1127; *Noll*, 809 F.2d at 1448 (*citing Broughton v. Cutter Labs*., 622 F.2d 458, 460 (9th Cir. 1980)).

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff Michael A. Richardson is GRANTED leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a).

IT IS FURTHER ORDERED that the Amended Complaint and this action are DISMISSED. The Clerk of Court is DIRECTED to enter judgment accordingly and to close its file in this matter.

DATED this 19th day of June, 2009.

_____
Héctor C. Estrada
United States Magistrate Judge